The COUNTY OF OAKLAND, by George W. KUHN, the Oakland County Drain Commissioner, Plaintiff,

and

the County of Macomb, by Thomas S. Welsh, Macomb County Public Works' Commissioner, Intervening Plaintiff,

v.

The CITY OF DETROIT; Coleman A. Young; Charles Beckham; Nancy Allevato, as Personal Representative for the Estate of Michael J. Ferrantino, Sr.; Darralyn Bowers; Sam Cusenza; Joseph Valentini; Charles Carson; Walter Tomyn; Vista Disposal, Inc.; Michigan Disposal, Inc.; Wayne Disposal, Inc.; Wolverine Disposal, Inc.; and Wolverine Disposal–Detroit, Inc., Defendants.

No. 84–71068.

United States District Court, E.D. Michigan, S.D.

Feb. 14, 1992.

**1276**

See also 776 F.Supp. 1211.

Philip G. Tannian, Detroit, Mich., Robert Hurlbert, Bloomfield Hills, Mich., for plaintiff.

William W. Misterovich, Mount Clemens, Mich., James A. Smith/Vincent Tatone, Bodman Longley, Detroit, Mich., for intervening plaintiff.

S. Allen Early, III, Miller Canfield, Edward F. Bell, Bell & Gardner, Kenneth M. Zorn, Richard E. Zuckerman, Honigman Miller, N.C. Deday Larene, Detroit, Mich., Robert S. Harrison, David N. Zacks, Birmingham, Mich., Daniel J. LaCombe, Sharon M. Woods, Barris Sott Denn & Driker, Detroit, Mich., for defendants.

## OPINION AND ORDER

GADOLA, District Judge.

Plaintiff County of Oakland and intervening plaintiff County of Macomb filed the instant civil action in 1984 to recover damages from defendants for allegedly violating the Sherman Act, 15 U.S.C. §§ 1–7, and the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. §§ 1961–68.[1] Plaintiffs named as defendants 14 officials and corporations, including the City of Detroit and Mayor Coleman A. Young. Plaintiffs allege that defendants conspired to violate the antitrust and racketeering laws by excluding competition, illegally fixing the price of sludge hauling, monopolizing the sludge hauling industry and imposing illegal overcharges.

Counts I and II of the complaints allege violations of the federal antitrust laws, 15 U.S.C. §§ 1 & 2, by all defendants.

Counts III through VII of the complaints allege RICO violations, 18 U.S.C. §§ 1961–68. Count III alleges RICO violations by defendants Detroit, Beckham, Ferrantino, Bowers, Cusenza, Valentini, Tomyn, Carson, Michigan Disposal, Wayne Disposal, Wolverine and Wolverine–Detroit through the enterprise Vista Disposal. Count IV alleges a RICO conspiracy by the same defendants named in Count III and again pertains to the enterprise Vista Disposal. Count V alleges violations of RICO by defendants Detroit and Beckham through the enterprise Detroit Water and Sewerage Department ["DWSD"]. Count VI alleges violations of RICO by defendants Ferrantino, Bowers, Cusenza, Valentini, Tomyn, Carson, Vista Disposal, Michigan Disposal, Wayne Disposal, Wolverine and Wolverine–Detroit through the enterprises Vista Disposal, Michigan Disposal, Wayne Disposal, Wolverine, Wolverine–Detroit and Vista/Wolverine. Count VII alleges RICO conspiracy violations by the same defendants named in Count VI and again pertains to the enterprises named in Count VI.

Count VIII alleges a breach of fiduciary duty by Young pursuant to 28 U.S.C. § 959.

Defendant Detroit, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), filed a motion to dismiss Counts I through V of the complaints December 11, 1990. Defendant Young, pursuant to Fed.R.Civ.P. 12(c), filed a motion to dismiss Counts I, II and VIII of the complaints December 11, 1990. Defendants Allevato, Carson, Valentini and Wayne Disposal, Inc.,[2] pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), filed a motion to dismiss Counts III, IV, VI and VII of the complaints December 11, 1990.[3] Defendant Beckham, pursuant to Fed.R.Civ.P. 12(c), filed a motion to dismiss Counts I through V of the complaints December 26, 1990. Oakland filed responses in which Macomb concurred, and the various defendants filed replies and concurrences.

This matter was referred to Magistrate Judge Paul J. Komives. In his October 10, 1991 report and recommendation, the magistrate judge proposed granting Detroit's motion to dismiss the RICO claims against

---

1. The complaints filed by Oakland and Macomb are substantially similar.

2. These defendants, along with those other defendants who have concurred in this motion, will be referred to as the "Allevato Defendants."

3. Defendants Detroit, Tomyn, Michigan Disposal, Inc., Beckham, Cusenza, Wolverine Disposal, Inc. and Wolverine Disposal–Detroit, Inc. have moved to dismiss the claims against them by filing notices in which they concur in and adopt the motions and briefs of defendants Allevato, Detroit and Young.

it and denying all other motions for dismissal. The Allevato Defendants filed their objections October 23, 1991. Detroit and Young filed their objections October 28, 1991. Oakland filed its objection October 24, 1991. Macomb filed its concurrence in Oakland's objections, and the remaining defendants filed their concurrences in the objections of Young, Detroit and the Allevato Defendants. Oakland filed responses to Young's, Detroit's and the Allevato Defendants' objections. The Allevato Defendants filed a reply to Oakland's response.

This court reviewed the matter *de novo* pursuant to 28 U.S.C. § 636(b)(1)(B). Because this court disagrees with some of the magistrate judge's recommendations, this court will issue a complete opinion on this matter.

## STANDARD OF REVIEW

■ Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or 12(c), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965).

■ The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir.1984).

## I. COUNTS I & II

Counts I and II of the complaints allege violations of federal antitrust law, 15 U.S.C. §§ 1 & 2, by all defendants. De-

troit, Young and Beckham filed motions to dismiss asserting that the Local Government Antitrust Act ["LGAA"], 15 U.S.C. §§ 34–36, should be applied to bar Macomb's complaint and should be applied retroactively to bar Oakland's complaint. Detroit, Young and Beckham assert that the LGAA bars Macomb's claims because Macomb's complaint was filed after the effective date of the LGAA. Defendants also assert that the LGAA should be applied retroactively to bar Oakland's antitrust damage claims.

Oakland and Macomb argue that defendants cannot meet the burden of demonstrating that the LGAA should be retroactively applied. Plaintiffs contend that defendants were not acting within their governmental authority and that the LGAA does not immunize criminal or unauthorized activity. In addition, plaintiffs contend that the stage of litigation and unavailability of alternative relief favors continued prosecution of their claims, and a treble damage award against defendants would not harm Detroit or its taxpayers. Finally, plaintiffs challenge the constitutionality of the LGAA's retroactivity provision as an unlawful delegation of legislative power to the judiciary.

The LGAA provides in relevant part:

(a) Prohibition in general. No damages, interest on damages, costs, or attorney's fees may be recovered under [15 U.S.C. §§ 15, 15a or 15c] from any local government, or official or employee thereof acting in an official capacity.

(b) Preconditions for attachment of prohibition; prima facie evidence for nonapplication of prohibition. Subsection (a) shall not apply to cases commenced before the effective date of this Act unless the defendant establishes and the court determines, in light of all the circumstances, including the stage of litigation and the availability of alternative relief under the Clayton Act, that it would be inequitable not to apply this subsection to a pending case. In consideration of this section, existence of a jury verdict, district court judgment, or any stage of litigation subsequent thereto, shall be

deemed to be prima facie evidence that subsection (a) shall not apply.

15 U.S.C. § 35.

■■■ At the outset, it appears that the LGAA's retroactivity provision is constitutional. Congress has wide latitude in making civil, as opposed to criminal, statutes retroactive. The constitution only prohibits, without qualification, *ex post facto* criminal legislation. *See Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). "The mere fact that a statute applies to a civil action retrospectively does not render it unconstitutional." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 554, 69 S.Ct. 1221, 1229, 93 L.Ed. 1528 (1949). This court agrees with the few courts that have considered this issue and holds that the LGAA retroactivity provision is constitutional. *See, e.g., Miami Int'l Realty Co. v. Town of Mt. Crested Butte*, 607 F.Supp. 448, 451 & n. 1 (D.Colo.1985); *Jefferson Disposal Co. v. Parish of Jefferson*, 603 F.Supp. 1125, 1137 (E.D.La.1985).

■■■ The effective date of the LGAA was September 24, 1984. Macomb's complaint was filed November 19, 1984. Because Detroit is a local government as defined in 15 U.S.C. § 34(1)(A), Counts I and II of Macomb's complaint are barred as to Detroit.[4] Further, Macomb's complaint explicitly states that "Young and Beckham each performed the acts alleged above in their official capacities as agents and officers of Detroit."[5] All allegations in the complaint are to be accepted as true. *Scheuer*, 416 U.S. at 238, 94 S.Ct. at 1687; *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965). Because Macomb has affirmatively pleaded that Young and Beckham have acted in an official capacity, Counts I and II of Macomb's complaint are barred as to Young and Beckham.

■■■ Oakland's complaint was filed March 8, 1984, well before the effective date of the LGAA. Therefore, section 35(a) does not automatically bar Oakland's complaint. However, defendants argue that section 35(b) should be invoked to retroactively bar Oakland's complaint. The Sixth Circuit has enunciated the following six factors which should be weighed in determining whether section 35(b) should retroactively bar a lawsuit:

(1) the stage of the litigation,

(2) availability of alternative relief,

(3) whether the local government, its officials or employees were acting within their normal authority,

(4) the financial harm to the local government, its officials or employees.

(5) whether the alleged violations were predicated on federal or state law or policy, and

(6) unclean hands of the local government, its officials or employees.

*Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1270–72 (6th Cir.1989). This court must weigh these factors for each individual defendant. Each defendant carries the burden of demonstrating that the LGAA should bar the complaint. *Huron Valley Hosp., Inc. v. City of Pontiac*, 612 F.Supp. 654, 665 (E.D.Mich.1985), *aff'd*. 792 F.2d 563 (6th Cir.1986), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1987).

■■■ The *Opdyke* factors weigh in favor of granting Detroit's motion to dismiss. First, plaintiffs argue that the stage of the litigation is relatively advanced. The complaint was filed in 1984. Nearly eight years have passed, and both sides have invested a great deal of time and money in this case. Further, the case has advanced to the Sixth Circuit on one disputed issue, thereby prolonging the process even further. However, there has been no judgment or jury determination of guilt or innocence. Section 35(b) states that a jury verdict or district court judgment shall be prima facie evidence to bar the application of the LGAA. Because Congress stated that

---

**4.** There seems to be some confusion as to the clause "acting in an official capacity" as it appears at the end of 15 U.S.C. § 35(a). This clause modifies "official or employee" and does not modify "any local government." Therefore, actions by local governments are exempted from monetary liability.

**5.** Macomb Compl. at para. 45.

a judgment or jury verdict was evidence in support of sustaining the lawsuit, anything less must not be conclusive. Further, in *Opdyke* the litigation had proceeded for six years and was dismissed just prior to trial.

Second, Oakland has alternative forms of relief available to it. There are fourteen named defendants in this lawsuit. Dismissal of Detroit, admittedly the deepest pocket available, will not preclude Oakland from collecting from the other defendants. "[T]he possibility of recovery from the city's co-defendants strikes us as a most important factor." *Id.* at 1270.

Third, Detroit was acting within its normal legislative, regulatory, executive and administrative authority in providing its citizens with adequate sewage disposal services. Proper sanitation, along with fire and police protection, are the basic services that most major American cities provide.

Fourth, a treble damage award against the City of Detroit and its taxpayers would be especially burdensome at this time. The city is apparently operating at a deficit. It is self-evident that a treble damage award would impair the city's ability to provide basic services to its citizens.

Fifth, the city's actions were apparently taken in response to federal court orders made pursuant to a consent judgment involving the Environmental Protection Agency. *See United States v. Michigan,* No. 77–71100 (E.D.Mich. Sept. 9, 1977).

Finally, there is a dispute as to whether it is equitable to excuse Detroit from the antitrust laws. Most of the city's alleged violations took place after the Supreme Court's confusing and controversial decision in *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (4–1–4 plurality) but before the Supreme Court's definitive decision in *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). In *Lafayette,* four members of the Court stated that government entities were subject to

federal antitrust laws if their anti-competitive conduct was not pursuant to state policy. *Lafayette,* 435 U.S. at 414–15, 98 S.Ct. at 1137–38. One member of the Court indicated that municipalities were subject to federal antitrust laws if their anti-competitive conduct was not compelled by the state or was not essential to the state regulatory scheme. *Id.* at 425, 98 S.Ct. at 1143 (Burger, C.J., concurring in judgment). Most courts have not read *Lafayette* to be the bright line decision putting municipalities and their officials on notice of possible federal antitrust liability. *See, e.g., Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1569 (5th Cir.1984). The *Boulder* decision, however, has been recognized as the decision denying municipalities blanket protection from federal antitrust liability.

■ Here, Detroit's alleged violations occurred primarily between the *Lafayette* and *Boulder* decisions. Because of *Lafayette's* limited guidance and *Boulder's* definitiveness, it is more equitable than not to protect Detroit from federal antitrust liability. Further, the broader doctrine of "unclean hands" need not be completely satisfied for the protection of section 35(b) to attach.

> [Even if] the district court had believed that [plaintiff] suffered some injury as the result of an antitrust violation by the city, the court still would not have been required to accept [plaintiff's] "unclean hands" argument. The statute does not say that a municipality claiming the protection of 15 U.S.C. § 35(a) must have no actual liability under the antitrust laws— and it would be strange indeed for Congress to limit the protection accorded by the 1984 legislation to municipalities least in need of protection.

*Opdyke,* 883 F.2d at 1272. This court therefore dismisses Counts I and II of Oakland's complaint against defendant Detroit.[6]

---

**6.** Oakland's argument that the LGAA does not immunize criminal activity is inapplicable to

Detroit. A municipality cannot form the requisite criminal intent. *See infra* pp. 1282–1283.

The six-factor *Opdyke* test also applies to defendants Young and Beckham.[7] First, the stage of the litigation is relatively advanced, but not conclusively so, for both Young and Beckham. Second, Oakland has alternative forms of relief available to it beyond Detroit, Young and Beckham. Third, Young was acting within his normal regulatory, executive and administrative authority as the court-appointed administrator of the Wastewater Treatment Plant. Beckham was the director of the DWSD, and his actions were not outside his normal authority.

■■■ Fourth, a treble damage award against Young and Beckham would be just as burdensome as the same award against the remaining defendants. However, the threat of repeated monetary damage suits against public officials would make public service prohibitively unaffordable to most who wish to serve. Further, Oakland may still collect from the remaining co-defendants. Fifth, Young's and Beckham's actions were apparently taken in response to federal court orders made pursuant to a consent judgment involving the Environmental Protection Agency. *See United States v. Michigan*, No. 77–71100 (E.D.Mich. Sept. 9, 1977). Finally, just as with defendant Detroit, the equities do not wholly weigh against retroactively applying the LGAA to bar Oakland's antitrust counts against Young and Beckham. This court therefore dismisses Counts I and II of Oakland's complaint against defendants Young and Beckham.[8]

Because the antitrust claims by plaintiffs against Detroit, Young and Beckham have been dismissed, this court will not address the issues of qualified governmental immunity and antitrust standing asserted by Young and Beckham. Further, this court will not address the issues of absolute judicial immunity and the termination of the receivership raised by Young.

## II. COUNTS III THROUGH VII

Counts III through VII of plaintiffs' complaints allege RICO violations by various defendants, not including Young, through various enterprises. Detroit, Beckham and the Allevato Defendants filed motions to dismiss these RICO counts. Defendants Tomyn, Michigan Disposal, Beckham Cusenza, Wolverine and Wolverine–Detroit have also moved to dismiss the claims against them by filing notices in which they concur in and adopt the motions of the Allevato Defendants, Detroit and Beckham.

### A. Municipal RICO Liability

Detroit asserts that the city cannot be held liable under the RICO laws because it is incapable of forming the requisite criminal intent. Plaintiffs counter by stating that a municipality falls within the definition of "person" under the RICO laws and that a municipality may be made responsible for the requisite intent.

Plaintiffs allege that Detroit is liable for RICO violations under 18 U.S.C. § 1962. Section 1962(c) prohibits

> any person ... associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1964(c) states that

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States dis-

---

**7.** Oakland's complaint also expressly states that "Young and Beckham each performed the acts alleged above in their official capacities as agents and officers of Detroit." Oakland Compl. at para. 45. Therefore, just as with Macomb's complaint, the LGAA also applies to Young and Beckham.

**8.** Oakland's argument that the LGAA does not immunize criminal activity is inapplicable to Young and Beckham. Oakland's complaint only challenges activity conducted within Young's and Beckham's official capacities. By definition, any official conduct must exclude criminal activity.

Further, this court has not found any authority stating that the LGAA fails to immunize criminal activity. As the statute is plain on its face and lacks an exception for criminal conduct, this court will not read an exception into the LGAA.

trict court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Section 1962(d) prohibits any "person" from conspiring to violate the prohibitions of RICO, including section 1962(c).

██ The term "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). There is a split in authority as to whether a municipal corporation comes under the statutory definition of "person" for the purposes of RICO liability. Compare *Smallwood v. Jefferson County Gov't.*, 743 F.Supp. 502, 504 (W.D.Ky.1990) (municipal corporation is not "person" for purposes of RICO): *Massey v. Oklahoma City*, 643 F.Supp. 81, 84 (W.D.Okla.1986) (same) with *Nu–Life Constr. Corp. v. Board of Educ.*, 779 F.Supp. 248, 251 (E.D.N.Y.1991) (municipal corporation is a "person" within the meaning of RICO): *In re Citisource Sec. Litig.*, 694 F.Supp. 1069, 1079 (S.D.N.Y.1988) (same). Because a municipal corporation is capable of holding legal or beneficial property in Michigan, the City of Detroit qualifies as a "person" for the purposes of RICO.

██ A "person" is liable under the RICO laws only if he manifests a specific intent associated with the various underlying offenses. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir. 1991). However, it is doubtful that a municipal corporation can form the requisite intent. In *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991), the Ninth Circuit held that civil RICO claims were properly dismissed because "government entities are incapable of forming a malicious intent." In *Nu–Life*, 779 F.Supp. at 252, the court held that "a municipal entity, while a 'person' within the meaning of 18 U.S.C. § 1961(3), is incapable of forming the criminal intent necessary to establish the underlying predicate offenses...." *See also*

*Jade Aircraft Sales, Inc. v. City of Bridgeport*, No. B–83–454, 1990 WL 128573, at *1 (D.Conn. July 9, 1990); *North Star Contracting Corp. v. Long Island R.R. Co.*, 723 F.Supp. 902, 907–909 (E.D.N.Y.1989); *Albanese v. City Fed. Sav. & Loan Ass'n*, 710 F.Supp. 563, 569 (D.N.J.1989). Upon the weight of authority, this court holds that a municipal corporation cannot form the requisite criminal intent and cannot be held liable under the civil RICO laws. Therefore, Counts III, IV and V are dismissed as to defendant Detroit.[9]

**B. Plaintiffs' Lack of RICO Standing**

██ Beckham and the Allevato Defendants assert that plaintiffs are without standing to maintain this suit under 18 U.S.C. § 1964(c) because they were indirect purchasers of the sewage disposal services. In a prior proceeding, the Sixth Circuit had affirmatively stated that plaintiffs are proper parties to bring suit in this action based on other grounds, not including whether plaintiffs were direct or indirect purchasers. *County of Oakland v. City of Detroit*, 866 F.2d 839, 851 (6th Cir.1989). However, a later Sixth Circuit case has addressed this issue.

In *Henry & Wright Corp. v. Automatic Press Corp.*, 924 F.2d 1058 (6th Cir.1991) (unpublished disposition), the Sixth Circuit affirmatively stated that an injury need not be direct for a person to sue under RICO. In interpreting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the court stated

> *Sedima* holds that individuals who suffer indirect injuries through the violation of § 1962 may have standing to assert a claim under § 1964(c). "RICO is to be read broadly" to permit recovery for direct and indirect damages which flow from the commission of predicate acts. *Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285.

*Henry & Wright*, 924 F.2d 1058. This view is shared by other courts that have addressed the issue of an indirect victim suing under RICO. *See, e.g., Ocean Energy*

---

9. Because Count V is dismissed as to Detroit, the court will not address Detroit's alternative argument that plaintiffs have failed to properly plead a cause of action in Count V.

*II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 744 (5th Cir.1989); *Bass v. Campagnone,* 838 F.2d 10, 11–12 (1st Cir. 1988) (direct-indirect analysis not determinative); *Terre du Lac Assoc., Inc. v. Terre du Lac, Inc.,* 772 F.2d 467, 472 (8th Cir. 1985); *Huntsman–Christensen Corp. v. Mountain Fuel Supply Co.,* No. C86–0530G, 1986 WL 15400, at *5–6 (D.Utah Nov. 24, 1986). Therefore, this court holds that plaintiffs have standing to sue under RICO even as the victims of an indirect injury.

### C. Fractionalization of Cause of Action

■■■ Beckham and the Allevato Defendants further argue that Counts III through VII should be dismissed because plaintiffs have erroneously fractionalized one alleged RICO cause of action into several. Counts III, V and VI allege substantive RICO violations and Counts IV and VII allege RICO conspiracy violations of the acts delineated in Counts III and VI respectively. The defendants named in Counts III and IV, Count V, and Counts VI and VII are different. Further, the separate conspiracy counts allege alternative "enterprises" under RICO.

■■■ The wording of section 1962 indicates that the substantive offense, section 1962(c), is separate and distinct from the conspiracy offense of section 1962(d). Therefore, these causes of action are properly presented in different counts of the complaint. *See United States v. Benevento,* 836 F.2d 60, 73 (2d Cir.1987). Further, each count presents a different factual and legal theory of recovery. The "enterprises" alleged in each substantive RICO count are different. The defendants named are different. Alternative pleading is clearly allowed in federal court. "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses." Fed.R.Civ.P. 8(e)(2).

The criminal RICO cases cited by defendants are not on point. In those cases, the separate counts were disallowed to protect the defendant from double jeopardy. In the instant civil RICO case, double jeopardy is not a concern. Based on the foregoing, defendants' fractionalization argument is without merit.

### D. Person–Enterprise Rule

In their motion to dismiss, the Allevato Defendants argued that plaintiffs' RICO counts were improper because plaintiffs named certain defendants as RICO violators in one count and as RICO "enterprises" in another count. The magistrate judge found in favor of plaintiffs on this issue. Because defendants have failed to object to this finding, and because the magistrate judge's reasoning is sound, this court will accept the magistrate judge's recommendation and not bar plaintiffs' RICO counts on these grounds.

### E. Pleading of RICO Enterprises

In their motion to dismiss, the Allevato Defendants also argued that the RICO "enterprise" must be distinct from the alleged "pattern of racketeering activity." Thus, according to defendants, plaintiffs' RICO counts should be dismissed because there are no allegations that any of the named enterprises existed as separate units apart from the alleged fraud and bribery activity. The magistrate judge found in favor of plaintiffs on this issue as well. Because defendants failed to object to this finding, and because the magistrate judge's reasoning is sound, this court will accept the magistrate judge's recommendation and not bar plaintiffs' complaint on these grounds.

### F. RICO Claims Against The Estate of Ferrantino

The Allevato Defendants further assert that the RICO claims against the Estate of Ferrantino abated with his death and ceased to exist. The Allevato Defendants alternatively argue that any alleged RICO damage award given to plaintiffs may not be trebled but must be limited to actual damages only.

■■■ RICO contains no provision addressing the survival or abatement of a cause of action brought under it after the death of a defendant. When a federal statute is silent as to the survivability of a cause of action, the question becomes one

of federal common law. *Murphy v. House-hold Fin. Corp.*, 560 F.2d 206, 208 (6th Cir.1977); *Bowles v. Farmers Nat'l Bank of Lebanon, Ky.*, 147 F.2d 425, 430 (6th Cir.1945). In order for a cause of action to survive the death of a defendant, the penalty must be remedial and not punitive. *See Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir.1991); *Bowles*, 147 F.2d at 429; *cf. Schreiber v. Sharpless*, 110 U.S. 76, 80, 3 S.Ct. 423, 423–24, 28 L.Ed. 65 (1884).

 This court holds that the civil penalties of RICO are primarily remedial in nature. In *dictum*, the Supreme Court has opined that the emphasis placed on the civil treble damage award of section 1964(c) by Congress is remedial and only secondarily penal. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 240–42, 107 S.Ct. 2332, 2344–46, 96 L.Ed.2d 185 (1987). Other courts deciding the issue have held that the civil RICO penalties are remedial or compensatory. *See, e.g., Faircloth*, 938 F.2d at 518; *Costello v. Cooper*, No. 86–CIV–3264 (JFK), 1990 WL 9856, at *3 (S.D.N.Y. Jan. 31, 1990); *State Farm Fire & Casualty Co. v. Estate of Caton*, 540 F.Supp. 673, 681 (N.D.Ind.1982), *overruled on other grounds, Ashland Oil, Inc. v. Arnett*, 656 F.Supp. 950 (N.D.Ind.1987).[10] Further, one court has observed that, because RICO violations often involve violence, it would be anomalous for the courts to excuse a racketeer and his estate from liability when the racketeer has "fortuitously" expired due to his or her "occupation." *Faircloth*, 938 F.2d at 518. For the foregoing reasons, this court holds that plaintiffs' RICO counts, and the sought after treble damage awards, survive Ferrantino's death.

**III. COUNT VIII**

Count VIII alleges a breach of fiduciary duty by Young pursuant to 28 U.S.C. § 959. Young asserts that the prior determination by Judge Feikens, that Young as administrator owed a duty "only to this Court,"[11] precludes plaintiffs from now asserting that Young owed them a fiduciary duty. Young also contends that because plaintiffs participated in an earlier related case[12] and acquiesced to the order appointing him as administrator, they have waived any claim of breach of fiduciary duty and are estopped from asserting such a claim.

 The language of 28 U.S.C. § 959 reads as follows:

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

(b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession, as such trustee, receiver or manager according to the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

---

**10.** Some courts have held that the civil RICO treble damage award is penal and therefore cannot survive the death of a defendant. The majority of these courts are found in the Northern District of Illinois. *See Lincoln Nat'l Life Ins. Co. v. Silver*, No. 86–C–7175, 1990 WL 160037 (N.D.Ill. Oct. 15, 1990); *Carroll v. Brown*, No. No. 80–C–6251, 1988 WL 130004 (N.D.Ill. Nov. 25, 1988); *Washburn v. Brown*, No. 81–C–1475, 1988 WL 130021 (N.D.Ill. Nov. 23, 1988); *Eliasen v. Hamilton*, No. 81–C–123, 1987 WL 7815 (N.D.Ill. March 9, 1987); *First*

*Interstate Bank of Nevada, N.A. v. Chapman and Cutler*, No. 83–C–8583, 1986 WL 7346 (N.D.Ill. June 23, 1986); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago*, No. 80–C–6401, 1985 WL 1118 (N.D.Ill. March 10, 1985); *see also Summers v. Federal Deposit Ins. Corp.*, 592 F.Supp. 1240, 1243 (W.D.Okla.1984).

**11.** *United States v. City of Detroit*, 476 F.Supp. 512, 521 (E.D.Mich.1979).

**12.** *United States v. Michigan*, No. 77–71100 (E.D.Mich.).

**1286**

A receiver appointed by the court becomes a fiduciary of the court and any person interested in the estate of which he has been made a receiver. As to third parties, the receiver is the fiduciary agent of the court with limited powers which are defined by the order of his appointment. *Federal Sav. & Loan Ins. Co. v. PSL Realty Co.,* 630 F.2d 515, 521 (7th Cir.1980); *Exchange Nat'l Bank of Chicago v. Abramson,* 295 F.Supp. 87, 92 (D.Minn. 1969); *In re Singer Furniture Corp.,* 47 F.2d 780, 784 (S.D.N.Y.1931). The fiduciary claims by plaintiffs, as such, are not precluded automatically on the basis of Young's status as court appointed administrator.

■ As to Young's argument that plaintiffs waived any claim of breach of fiduciary duty by not opposing Young's appointment, this court believes that Young misunderstands the issue. The relevant concern is not whether Young should have been appointed in the first place, but whether Young's actions after appointment were taken in accordance with his fiduciary duties.

The order appointing Young to the position of administrator explicitly protects Young from any responsibility to any other person or entity beyond the court that appointed him. The order granting Young his administrative powers reads in relevant part:

> There is thus conjoined in one person, Mayor Coleman A. Young, both the traditional powers of his office and the extraordinary powers inherent in this appointment to bring about compliance [with the Federal Water Pollution Control Act and the federal Air Pollution Control Act]. These powers will enable him to act decisively and swiftly to bring about needed results; in their exercise, *where needed,* he is not responsible to the Water Board, the Civil Service Commission, the Common Council, *suburban governments,* or the State of Michigan, but only to this court.

*United States v. City of Detroit,* 476 F.Supp. at 521 (emphasis added). It is plain from the language of this order that any acts *necessarily* taken to comply with the federal pollution laws were taken without any duty owed to plaintiffs. However, the acts alleged in Count VIII are not acts that would have been necessary to comply with the law. Therefore, Count VIII stands as pleaded.

### ORDER

For the foregoing reasons, it is hereby ORDERED that defendant City of Detroit's motion to dismiss is GRANTED and that Counts I, II, III, IV and V of plaintiffs' complaint are DISMISSED as to defendant City of Detroit.

It is further ORDERED that defendant Coleman A. Young's motion to dismiss is GRANTED in part and DENIED in part and that Counts I and II are DISMISSED as to defendant Coleman A. Young.

It is further ORDERED that defendant Charles Beckham's motion to dismiss is GRANTED in part and DENIED in part and that Counts I and II are DISMISSED as to defendant Charles Beckham.

It is further ORDERED that the motion to dismiss filed by defendants Nancy Allevato, as personal representative for the Estate of Michael J. Ferrantino, Sr., Charles Carson, Joseph Valentini and Wayne Disposal, Inc. is DENIED.

SO ORDERED.