Nathan EPSTEIN, a Shareholder of National Machinery Exchange, Inc., Suing in the Right of National Machinery Exchange, Inc., Plaintiffs,

v.

Joseph EPSTEIN, Elissa Epstein, as Executor of the Estate of Herbert Epstein, Lawrence Epstein and Jerome Kamerman, Defendants,

v.

NATIONAL MACHINERY EXCHANGE, INC., Nominal Defendant.

No. 86 Civil 9589 (JSR).

United States District Court,
S.D. New York.

June 25, 1997.

Franklin H. Snitow, Charles D. Cunningham, New York City, for Plaintiff.

Michael M. Rosenbaum, Short Hills, NJ, G. Robert Blakey, Notre Dame, IN, Nina Epstein, New York City, for Defendants.

RAKOFF, District Judge.

This ancient case involves civil RICO claims filed derivatively by one shareholder of the Epstein family business against his co-shareholder brothers and nephew, alleging, *inter alia,* that they fraudulently siphoned the company's funds into their personal ventures through a pattern of racketeering. When the case was reassigned to this Court on February 26, 1997, motions for summary judgment and dismissal had been pending since 1995. After hearing oral argument and receiving voluminous supplemental submissions from the parties, the Court denied the parties' motions by order dated May 23, 1997 and set the case down for trial on July 15, 1997. Earlier this week, however, counsel brought to the Court's attention a possible ground for disqualification that, while previously unknown to the Court, raises the specter that this oft-reassigned case may once again be in danger of reassignment. Accordingly, before the Court is called upon to determine the disqualification issue later this week, it seems provident briefly to memorialize the grounds for the aspect of the Court's summary decision of May 23, 1997 that involved an arguably unsettled issue of law, *viz,* whether the RICO claim against defendant Herbert Epstein survives his death and thus is properly continued against his estate.

Neither the statutory language nor the legislative history of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., specifically addresses whether a private civil claim survives a party's death. Nor, although survival of a federally created claim is a matter of federal substantive law, does the United States Code contain a general survival statute. *See* Abrams, *The Law of Civil RICO* ¶ 2.9. Accordingly, the issue is governed in the first instance by principles of federal common law, which generally prescribe that a claim survives a party's death if it is "remedial" rather

than "punitive." *See Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980); *see also* Moore's Federal Practice ¶ 25.04[1] ("The general rule under federal common law is that an action survives the death of a party if it is remedial and not penal in nature").

However, as the Supreme Court has had repeated occasion to observe in recent years, terms like "remedial" and "punitive" are neither self-defining nor mutually exclusive. *See, e.g., United States v. Ursery,* — U.S. —, —, 116 S.Ct. 2135, 2142, 135 L.Ed.2d 549 (1996); *Austin v. United States,* 509 U.S. 602, 610, 113 S.Ct. 2801, 2805–06, 125 L.Ed.2d 488 (1993); *United States v. Halper,* 490 U.S. 435, 447–48, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989). The criminally-predicated civil provisions of a hybrid civil/criminal statute like RICO mix remedial and punitive elements in varying quantities, and the determination that a particular provision or application of civil RICO is "remedial" or "punitive" thus inevitably turns on differences of degree rather than kind. *See Faircloth v. Finesod,* 938 F.2d 513, 518 (4th Cir.1991) ("civil RICO is a square peg, and squeeze it as we may, it will never comfortably fit in the round holes of the remedy/penalty dichotomy").

Perhaps for these reasons, the district courts that have grappled with whether a civil RICO cause of action survives a defendant's demise have not always reached the same conclusion. *Compare Holford USA Ltd., Inc. v. Harvey,* 169 F.R.D. 41 (S.D.N.Y. 1996) (holding that a private civil RICO claim is remedial and does not abate upon a defendant's death); *First American Corp. v. Al-Nahyan,* 948 F.Supp. 1107 (D.D.C.1996) (same), *with Confederation Life Ins. Co. v. Goodman,* 842 F.Supp. 836 (E.D.Pa.1994) (holding that a private civil RICO claim is punitive and does not survive a defendant's death); *Ball v. Marshall Field V,* 1993 WL 101485 (N.D.Ill. Apr.2, 1993) (same). Inferring from this division that the result depends on the particular facts of each case, the Estate now urges the Court to eschew any "bright-line" rule altogether and, instead, determine whether a RICO claim survives a defendant's death through application of a multi-factor case-specific test involving (1) the character of the defendant's death, (2) the relative culpability of other defendants, if any, (3) whether the goals of deterring RICO violations and encouraging RICO lawsuits are promoted if the RICO claim survives and (4) whether the defendant's estate would be unjustly enriched by the deceased's RICO violations if the RICO claim abates. *See* Estate Of Herbert Epstein's Supplemental Reply Memorandum In Support Of Its Motion For Summary Judgment, at 3–5.

Despite the facial appeal of this creative solution, the Court in the end is not persuaded it makes good law, or good sense. To begin with, multi-factor case-specific tests suffer from certain inherent drawbacks:

On the one hand, by emphasizing certain *a priori* factors over others, such tests, if conscientiously applied, may artificially skew outcomes in a way that a general "all the facts and circumstances" test would not. For example, is the Estate's proposed factor # 2—the relative culpability of other defendants—really relevant to the survivorship of a claim that is, after all, a joint and several liability of all defendants? Or, conversely, is the contributory culpability (if any) of the plaintiff not a materially relevant factor that should be included in the list?

On the other hand, because the prescribed factors in such tests are both numerous and unweighted (as well as, usually, broad and vague), they provide a facade behind which a court can reach almost any result without appearing to depart from the application of the test. Thus, as Professor Sunstein has noted, "a judge might seem able in every [such] case to find a suitably weighted set of relevant-sounding factors to justify any conclusion he wants." C. Sunstein, Legal Reasoning And Political Conflict 30 (1996); *cf., Itel Containers Inter. Corp. v. Huddleston,* 507 U.S. 60, 79–80, 113 S.Ct. 1095, 1106–08, 122 L.Ed.2d 421 (Scalia, J., concurring) (multi-factor and balancing tests are "so uncertain in their application ... that they can hardly be said to foster stability or engender reliance deserving of stare decisis protection").

A multi-factor case-specific test, in short, provides neither reasonable guidance to the

courts nor reasonable certainty to the litigants. These drawbacks, moreover, are especially severe in the context of survival of a claim after death, for how can a party make reasonable provision for his or her estate if the survival of a claim is so intrinsically unpredictable?

In any case, resort to a multi-factor case-specific test is not only unadvisable but, in the Court's view, unlawful with respect to the issue at bar. For Congress' silence with respect to the survival of a civil RICO claim cannot reasonably be read as a warrant to the courts to fashion unprecedented multi-factor case-specific tests of the kind the Estate urges. Rather, it seems obvious that Congress did not specifically address claim survival in RICO because it had no need to: established principles of federal common law already provided that remedial claims survive, and Congress made plain that its purpose in creating RICO's private right of action was to provide victims with a remedy.

Thus, Congress not only placed RICO's private action provision within the section of the Act entitled "Civil Remedies," [1] but also modeled it closely on the parallel treble damage provisions of the antitrust laws that have repeatedly been held to be remedial in nature. See, e.g., Pfizer v. Gov't of India, 434 U.S. 308, 313, 98 S.Ct. 584, 587–88, 54 L.Ed.2d 563 (1978); Brunswick Corp. v. Pueblo Bowl–O–Mat, 429 U.S. 477, 485–86, 97 S.Ct. 690, 695–96, 50 L.Ed.2d 701 (1977). As the Court explained in Brunswick,:

> [The treble damage provision of the Clayton Act] ... is in essence a remedial provision. It provides treble damages to '[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ...' Of course, treble damages also play an important role in penalizing wrong doing, as we have also frequently observed. It nevertheless is true that the treble-damage provision, which makes awards available only to injured parties, and measures awards by a

multiple of the injury actually proved, is designed primarily as a remedy.

Brunswick, 429 U.S. at 485, 97 S.Ct. at 696 (citations omitted). Everything in RICO's own language and history supports the view that Congress viewed RICO's treble damage remedy as similarly remedial to the Clayton Act provision on which it was so closely patterned. See, e.g., Klehr v. Smith Corp., — U.S. —, — – —, 117 S.Ct. 1984, — – —, 138 L.Ed.2d 373 (1997); Agency Holding Corp. v. Malley–Duff & Assoc., Inc., 483 U.S. 143, 150, 107 S.Ct. 2759, 2764, 97 L.Ed.2d 121 (1987); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 241, 107 S.Ct. 2332, 2345, 96 L.Ed.2d 185 (1987).

Accordingly, both the Supreme Court and the Second Circuit have repeatedly described RICO's private right of action as remedial in nature. See, e.g., Shearson/American Express, Inc., 482 U.S. at 240–41, 107 S.Ct. at 2344–45 ("The legislative history of § 1964(c) reveals the same emphasis on the remedial role of the treble damage provision."); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 851 (2d Cir.1987) (" § 1964(c) is primarily a compensatory and secondarily a deterrent measure."). As the Estate itself implicitly recognizes, there is nothing about the general nature of claim survival that should disturb this conclusion.[2] To be sure, Congress' remedial purpose may be found in some contexts to create effects so punitive as to transform the character of the claim into an essentially penal cause of action. Cf., Ursery, — U.S. —, 116 S.Ct. 2135; Halper, 490 U.S. 435, 109 S.Ct. 1892. But, on the other hand, there are no constitutional provisions applicable to the instant context that require a court to pay special heed to the punitive effects of a RICO provision in derogation of the remedial aspects. Id.

■ In short, Congress viewed the private civil RICO claim as a victim's remedy, first

---

1. 18 U.S.C. § 1964. Furthermore, the Act provides overall that "the provisions of this title shall be liberally construed to effectuate its remedial purpose." Pub.L. No. 91–452, § 904(a), Title IX, 84 Stat, 947, reprinted in 18 U.S.C.A. § 1961 note.

2. Thus, while the Estate originally argued that a private civil RICO action was inherently punitive in this context, its shift to the multi-factor case-specific approach bears tacit witness to its recognition that the higher courts have effectively rejected this view.

and foremost, and so it has proven to be. By operation of settled principles of federal common law, it follows *a fortiori* that such claims survive a party's demise, whether the party be a plaintiff, see *Faircloth*, 938 F.2d at 518; *Costello v. Cooper*, 1990 WL 9856 (S.D.N.Y. Jan.31, 1990), or, as here, a defendant. *See, Holford USA Ltd., Inc.,* 169 F.R.D. at 43; *First American Corp.,* 948 F.Supp. at 1122; *County of Oakland by Kuhn v. City of Detroit,* 784 F.Supp. 1275, 1285 (E.D.Mich. 1992).