**FIRST AMERICAN CORP.,
et al., Plaintiffs,**

**v.**

**Sheikh Zayed Bin Sultan AL–NAHYAN,
et al., Defendants.**

**Civil Action No. 93–1309 (JHG).**

United States District Court,
District of Columbia.

Nov. 26, 1996.

Beth Rochelle Heifetz, MaryEllen Powers, Timothy J. Finn, Barbara McDowell, Christopher F. Dugan, David Elliott Miller, Stephen J. Brogan, Jones, Day, Reavis & Pogue, Washington, DC, George J. Moscarino, Jones, Day, Reavis & Pogue, Cleveland, OH, for plaintiffs First American Corp., First American Bankshares, Inc.

John Thomas Szymkowicz, Milton Peden Buffington, Szymkowicz & Buffington, Washington, DC, for defendant Ali Mohammad Shorafa.

Thomas Charles Green, Sidley & Austin, Washington, DC, for defendant Mohammed Bin Rashid Al–Maktoum, Sheikh.

Plato Cacheris, Philip Thomas Inglima, Cacheris & Treanor, Washington, DC, for defendants Kamal Ibrahim Adham, Sheikh Adham Corporation.

Thomas Jay Barrymore, Reichler, Milton & Medel, Washington, DC, for defendant Abdul Raouf Khalil.

William Horace Jeffress, Jr., Herbert John Miller, Jr., Douglas Frank Curtis, Martin David Minsker, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, William B. Shields, Washington, DC, for defendants Clark M. Clifford, Robert Alan Altman.

Vincent Morgan Garvey, U.S. Department of Justice, Civil Division, Washington, DC, Karen Richardson, Federal Bureau of Investigation, Federal Programs Branch, Civil Division, Washington, DC, for movant U.S.

Timothy M. Broas, Anderson, Hibey & Blair, Washington, DC, for movants BCCI Depositors' Protection Association, Adil Elias, Anthony P.J. Scott, Raad Al Zahawi, N.S. Auchi, Jordanian Depositors' Protection Association.

Mark Daniel Hopson, Sidley & Austin, Washington, DC, for cross-defendants Estate of Sheikh Rashid Bin Said Al–Maktoum, Stock Holding Company, Mohammed Bin Rashid Al–Maktoum, Sheikh, Crescent Holding Company.

Charles Eric Talisman, Jean V. MacHarg, Ronald S. Liebman, Patton Boggs, L.L.P., Washington, DC, for defendants, third-party defendants Zayed Bin Sultan Al–Nahyan, Sheikh, Khalifa Bin Zayed Al–Nahyan, Sheikh, Sultan Bin Zayed Al–Nahyan, Sheikh, Ghanim Faris Al–Mazrui, Department of Private Affairs of Sheikh Zayed Bin Sultan Al–Nahyan, Abu Dhabi Investment Authority.

James Joseph Murphy, Bryan Cave, L.L.P., Washington, DC, for third-party defendant Humaid Bin Rashid Al–Nuaimi, Sheikh.

James Joseph Murphy, Bryan Cave, L.L.P., Washington, DC, Charles Eric Talis-

man, Patton Boggs, L.L.P., Washington, DC, for third-party defendants Hamad Bin Mohammed Al–Sharqi, Sheikh, Mashriq Holding Company, S.A.

Sara E. Moss, Robert P. Haney, Jr., P. Benjamin Duke, Howard, Darby & Levin, New York City, for third-party defendant Sayed Jawhary.

### *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

The central issue in this case involves an allegation that the defendants, as senior officers, managers, agents and nominees for the Bank of Credit and Commerce International ("BCCI" [1]), illegally and secretly sought to acquire ownership and maintain control of First American Corporation ("FAC") and First American Bankshares ("FAB"), collectively known as First American. The 282–page, 687–paragraph Complaint charges 30 defendants with violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1962, common law fraud, breach of fiduciary duty, other tortious conduct, and civil conspiracy.

Presently pending are the following motions: (1) Defendants Clark M. Clifford and Robert A. Altman's Motion for Reconsideration of this Court's August 25, 1995 Memorandum Opinion and Order or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b) ("C & A's Motion for Reconsideration"); (2) Motion of Abdul Raouf Khalil to Dismiss Crossclaim; (3) Motion of Ali Mohammed Al–Shorafa to Dismiss the Cross-claims Filed by Defendants Clark M. Clifford and Robert A. Altman; (4) Joint Motion of Sheikh Kamala Adham, Sayed Jawhary and Adham Corporation to Dismiss the Third–Party Complaint ("Joint Motion"); (5) Motion of Defendants Estate of Sheikh Rashid Bin Said Al–Maktoum, Sheikh Mohammed Bin Rashid Al–Maktoum, Stock Holding Company, and Crescent Holding Company ("the Dubai Defendants") to Dismiss the Cross–Claims of Defendants/Cross–Claimants Clifford and Altman; (6) Motion of the Abu Dhabi Sovereigns to Dismiss Clifford and Altman's Third Party Complaint in its Entirety or, in the Alternative, to Strike it in the Interests of Justice and Judicial Economy and Request for Oral Hearing; (7) Motion of the Dubai Defendants to Dismiss the Complaint; and (8) Defendants' Motion for Reconsideration of Magistrate Judge Attridge's Order Denying Defendants Clifford and Altman's Motion for a Protective Order.

### I. Background

There are two plaintiffs in this case, FAC and FAB. FAC is a Virginia corporation with its principal place of business in Washington, D.C. At all times relevant to the Complaint, FAC was a privately-held bank holding company, *see* 12 U.S.C. § 1841 *et seq.*, which was wholly owned by Credit and Commerce American Investment, B.V. ("CCAI"), a Netherlands corporation which in turn was wholly owned by Credit and Commerce American Holdings, N.V. ("CCAH"), a Netherlands Antilles corporation. The only substantial asset of both CCAI and CCAH was the stock they held. Similarly, at all relevant times, FAB was a Virginia corporation and a registered bank holding company with its principal place of business in Washington, D.C. FAB, which was wholly owned by FAC, owned several regional banking companies, which owned subsidiary banks in the states of Florida, Georgia, Maryland, New York, Tennessee and Virginia.

The Complaint names 30 defendants:

1. His Highness Sheikh Zayed Bin Sultan Al–Nahyan ("H.H. Sheikh Zayed"), President of the United Arab Emirates ("UAE") and Ruler of the Emirate of Abu Dhabi.[2] H.H. Sheikh Zayed is also the Chairman of the Supreme Council of Rulers of the UAE, which is

---

1. "BCCI", as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A. ("BCCI Holdings"), its two operating subsidiaries, Bank of Credit and Commerce International S.A. ("BCCI S.A.") and Bank of Credit and Commerce International (Overseas) Limited ("BCCI Overseas"), and International Credit and Investment Company (Holdings) Limited ("ICIC Holdings"), an en-

tity previously found to be the alter ego of the other BCCI entities.

2. The UAE is comprised of seven Sheikdoms, the largest and wealthiest of which is the Emirate of Abu Dhabi.

the UAE authority responsible for making policy decisions and promulgating and implementing UAE laws;

2. His Highness Sheikh Khalifa Bin Zayed Al–Nahyan ("H.H. Sheikh Khalifa"), the eldest son of Sheikh Zayed and Crown Prince and Deputy Ruler of the Emirate of Abu Dhabi. H.H. Sheikh Khalifa is the designated successor to H.H. Sheikh Zayed as the Ruler of Abu Dhabi. H.H. Sheikh Khalifa was appointed Prime Minister of Abu Dhabi in 1971 and is currently the Chairman of the Abu Dhabi Investment Authority, Chairman of the Supreme Petroleum Council and Deputy Supreme Commander of the UAE Armed Forces;

3. High Highness Sheikh Sultan Bin Zayed Al–Nahyan ("H.H. Sheikh Sultan"), the second eldest son of H.H. Sheikh Zayed and the Deputy Prime Minister of the UAE;

4. His Excellency Ghanim Faris Al–Mazrui ("H.E. Mazrui") the principal financial advisor to the Ruling Family of Abu Dhabi. This defendant is also the Secretary General of the Abu Dhabi Investment Authority, Chairman of the Department of Private Affairs of Sheikh Zayed, Chairman of the "Committee for the Follow–Up and Supervision of Private Investments" ("Investment Committee") and holds various positions in several Abu Dhabi banks, including BCCI Holdings, BCCI Overseas and BCCI S.A.;

5. Department of Private Affairs of Sheikh Zayed Bin Sultan Al–Nahyan ("DPA"), an organization which managed the private affairs of the Ruling Family of Abu Dhabi;

6. Abu Dhabi Investment Authority ("ADIA"), the corporate entity responsible for coordinating the commercial investment policy of Abu Dhabi;

7. Abdullah Darwaish ("Darwaish"), Chairman of the DPA and former Chairman of the Investment Committee, Chairman of the ADIA and UAE Ambassador to Pakistan;

8. Ali Mohammad Shorafa (so named in the Complaint, but in actuality is H.E. Ali Mohammad Al–Shorafa) ("H.E. Al–Shorafa"), the former Grand Chamberlain (Director) of the President's Court of the UAE and Director of Presidential Affairs for the UAE;

9. Sheikh Humaid Bin Rashid Al–Nuaimi ("Sheikh Humaid"), Ruler of the Emirate of Ajman, UAE;

10. Estate of Sheikh Rashid Bin Said Al–Maktoum ("Sheikh Rashid"), the former Ruler of the Emirate of Dubai who died in 1990. Until his death, he served as Vice President and Prime Minister of the UAE and as a member of the Supreme Council of Rulers of the UAE;

11. Stock Holding Company, c/o the Estate of Sheikh Rashid Bin Said Al–Maktoum ("Stock Holding Co."), purportedly the personal holding company of Sheikh Rashid;

12. Sheikh Mohammed Bin Rashid Al–Maktoum ("Sheikh Mohammed"), the third eldest son of Sheikh Rashid, is the current Minister of Defense of the UAE and brother of the current ruler of Dubai;

13. Crescent Holding Co., c/o Sheikh Mohammed Bin Rashid Al–Maktoum, allegedly the personal holding company and alter ego of Sheikh Mohammed;

14. Sheikh Hamad Bin Mohammed Al–Sharqi ("Sheikh Hamad"), Ruler of the Emirate of Fujairah, UAE, and member of the Supreme Council of Rulers of the UAE;

15. Mashriq Holding Company, S.A. ("Mashriq Holding Co."), a Luxembourg company of which Sheikh Hamad is the principal shareholder, and claimed to be the personal holding company of Sheikh Hamad;

16. Sheikh Kamala Ibrahim Adham ("Sheikh Kamala"), a Saudi Arabian businessman and former head of security for the Kingdom of Saudi Arabia;

17. Adham Corporation, purported to be the personal holding company and alter ego of Sheikh Kamala;

18. Abdul Raouf Khalil ("Khalil"), a former Executive Administrator to Sheikh Kamala in Saudi Intelligence and one time Minister of Communications and Deputy Chief of Saudi Intelligence. Khalil is currently a business associate of Sheikh Kamala;

19. Sayed Jawhary (El Sayed El Gohari) ("Jawhary"), a business associate of Sheikh Kamala;

20. Faisal Saud Al–Fulaij ("Fulaij"), former Chairman of the Kuwait International Finance Company ("KITCO"), a BCCI affiliate in Kuwait, and director of two ICIC affiliates, Middle East Credit and Investment Company, S.A. and Finance and Investment International Limited;

21. Gulf Investment & Real Estate Company ("GIRECO"), an investment and real estate development company registered in Ajman, UAE;

22. Real Estate Development Company ("REDCO"), a publicly traded company incorporated in Kuwait;

23. Sheikh Khalid Bin Mahfouz ("Mahfouz"), a Saudi Arabian businessman and banker who served as deputy general manager of the National Commercial Bank of Saudi Arabia, the largest bank in Saudi Arabia;

24. Estate of Mohammed Mahmoud Hammoud ("Hammoud"), who allegedly had several front companies established in his name by BCCI;

25. Agha Hasan Abedi ("Abedi"), the principal and founder of BCCI/ICIC who served as its top corporate officer from 1973–1988;

26. Swaleh Naqvi ("Naqvi"), a principal of BCCI/ICIC and its second highest corporate officer from 1973–1988. Naqvi served as the top corporate officer from 1988–1990;

27. Zafar Iqbal Chaudhri ("Iqbal"), the Chief Executive Officer of Bank of Credit and Commerce (Emirates) ("BCC Emirates"), an Abu Dhabi affiliate of BCCI and a member of the governing boards of various BCCI/ICIC entities;.

28. Ghaith R. Pharaon ("Pharaon"), a Saudi Arabian businessman;

29. Clark M. Clifford ("Clifford"), Chairman of First American from 1981–1991 and from 1982–1991 was the Chairman of FAB. Clifford was also a Managing Director of CCAI and CCAH; and

30. Robert A. Altman ("Altman"), President and a Director of First American from 1981–1991, member of the Board of Directors of FAB and a Managing Director of CCAI and CCAH.

Of these defendants, thirteen have settled with plaintiffs [3], four have yet to be served with the Complaint,[4] six are in default,[5] and two have been dismissed voluntarily.[6] Only five are actively involved in this case as of this date: H.E. Al–Shorafa, Khalil, Sheikh Mohammed,[7] and Clifford and Altman.

As noted above, H.E. Al–Shorafa was the Director of Presidential Affairs for the UAE and Director of the Presidential Court. He also was a record shareholder of CCAH as of 1982, but plaintiffs claim that the use of his

---

**3.** H.H. Sheikh Zayed, H.H. Sheikh Khalifa, H.H. Sheikh Sultan, H.E. Mazrui, DPA, ADIA, Mahfouz, Sheikh Kamala, Adham Corp., Jawhary, Sheikh Hamad, Mashriq Holding Co. and Sheikh Humaid ("settling co-defendants"). The Abu Dhabi defendants settled with First American on January 21, 1994, *see* Notice of Dismissal, Annex A (docket # 120), and Sheikh Kamala, Adham Corp. and Jawhary settled in July of 1994. *See* Joint Motion, at 19.

**4.** Iqbal, the Estate of Sheikh Rashid, Crescent Holding Co. and Stock Holding Co.

**5.** Fulaij, Abedi, Naqvi, Darwaish, Pharaon and Hammoud. The plaintiffs intend to seek default judgments against these defendants once liability

has been resolved against the non-defaulting, non-settling defendants.

**6.** REDCO and GIRECO.

**7.** Counsel is appearing specially on behalf of the Estate of Sheikh Rashid Bin Said Al–Maktoum (Sheikh Rashid), Crescent Holding Co., and Stock Holding Co, none of which have yet been served with the Complaint. *See* Dubai Defendants' Motion to Dismiss at 2, n.*; Transcript of Status Conference, at 33 (statement of Thomas Green, Esq.) (Nov. 20, 1996).

name as a shareholder by BCCI was fraudulent. Complaint ¶ 17(a). Plaintiffs aver that BCCI gave H.E. Al–Shorafa loans and advances "to purchase CCAH stock as a nominee for BCCI/ICIC in no-risk, sham transactions whereby Defendant Shorafa was not held liable for servicing or repayment of loans or advances and was indemnified against any loss he might sustain." *Id.* The Complaint states that H.E. Al–Shorafa was compensated for this "fraudulent use of his name." *Id.*

Khalil was a record shareholder of BCCI, and he was a record shareholder of CCAH beginning in 1982. Complaint ¶ 29. Plaintiffs claim that Khalil, similar to H.E. Al–Shorafa, was a fraudulent shareholder of CCAH stock because he purchased it with money obtained from illegal no-risk, sham loans from BCCI/ICIC and held the stock as a BCCI nominee. *Id.*

Sheikh Mohammed is the third eldest son of Sheikh Rashid. He is also the current Minister of Defense of the UAE and a brother of the present Ruler of Dubai. Complaint ¶ 22. The plaintiffs allege that Sheikh Mohammed permitted a corporate entity under his control—Defendant Crescent Holding Company—to participate as a fraudulent shareholder in the scheme to acquire First American. *Id.* The plaintiffs allege that Defendant Crescent Holding Company served as a "record shareholder" of CCAH from 1982 to 1986 using loans from BCCI/ICIC to purchase CCAH stock illegally as a BCCI nominee.[8] *Id.* ¶ 23.

Sheikh Rashid, now deceased, ruled the Emirate of Dubai from 1958 until 1990. Complaint ¶ 20. The plaintiffs allege that he directed Defendant Stock Holding Company, his personal holding company and alter ego, to participate in the schemes alleged in the Complaint, including the scheme to acquire fraudulently and maintain illegally ownership of First American. *Id.* Stock Holding Company served as the "record shareholder" in CCAH from 1982 to 1986 and received loans from BCCI/ICIC to purchase CCAH illegally in sham transactions. *Id.* ¶ 21.

Mr. Clifford was Chairman of FAC from 1981 to August 1991 and was Chairman of FAB from 1982 through August 1991. Complaint ¶ 42. He was also a Managing Director of CCAI and CCAH. *Id.* Mr. Altman was a Director and President of First American from 1981 to August 1991, and a Director of FAB of Managing Director and an officer of CCAI and CCAH. *Id.* Both Clifford and Altman were legal counsel to BCCI and the record shareholders of Financial General Bankshares ("FGB")/CCAH.

In her Memorandum Opinion and Order of August 25, 1995, this Court denied Defendants Clifford's and Altman's Motion to Dismiss; denied Defendant H.E. Al–Shorafa's Motion to Dismiss except as to Count VIII, which was dismissed; denied Defendant Khalil's Motion to Dismiss except as to Count VIII, which was dismissed; denied Defendant Clifford's and Altman's Motion to Strike or for a More Definite Statement; and the Court directed the parties to commence discovery promptly, referring this matter to Magistrate Judge Patrick J. Attridge to resolve discovery disputes, if any.

## II.  Discussion

Presently pending are Defendants Clifford's and Altman's motion for reconsideration.[9] Also pending are motions to dismiss Clifford's and Altman's cross-claims and third-party claims for contribution and indemnification.[10] The Dubai Defendants, who

---

8. Crescent Holding Co. may be in liquidation proceedings in Luxembourg. *See* Transcript of Status Conference, at 34 (statement of Thomas Green, Esq.) (Nov. 20, 1996).

9. A number of parties have requested oral argument under Local Rule 108(h). Whether to grant a request for oral argument is a matter committed to the discretion of the Court. In resolving these motions, which have been thoroughly briefed, the Court has determined that oral argument is unnecessary.

10. Clifford and Altman seek contribution from all 28 of their codefendants ("contribution defendants") and indemnification against H.H. Sheikh Zayed, H.H. Sheikh Khalifa, H.H. Sheikh Sultan, ADIA, Darwaish, H.E. Al–Shorafa, Sheikh Humaid, Sheikh Rashid, Stock Holding Co., Sheikh Mohammed, Crescent Holding Co., Sheikh Hamad, Mashriq Holding Co., Sheikh Kamala, Adham Corporation, Khalil, Jawhary, Fulaij, GIRECO, REDCO, Mahfouz and Hammoud ("indemnification defendants").

were served after the Court's Memorandum Opinion of August 25, 1995 was issued, have also filed a motion to dismiss the main Complaint. Finally, Clifford and Altman have requested that this Court reconsider Magistrate Judge Attridge's decision to deny them a protective order from foreign deposition discovery. These matters will be taken up in turn.

## A. The Motion for Reconsideration

Clifford and Altman seek reconsideration of the Court's prior ruling, because they disagree with this Court's interpretation of *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.,* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) (*Bangor Punta*), as well as with her disposition of the statute of limitations issue. Alternatively, Clifford and Altman seek certification pursuant to 28 U.S.C. § 1292(b). Both requests will be denied.

■ In her previous opinion, the Court extensively analyzed *Bangor Punta,* concluding that based on the instant facts, it was not controlling. *See* Mem.Op., at 14–15. The Court also ruled that, assuming true the facts alleged in the Complaint, the Complaint was timely because the statute of limitations was tolled due to acts of fraudulent concealment. *Id.* at 26. While Clifford and Altman disagree with both rulings, in their motion for reconsideration, they neither offer the Court additional insight nor do they cite to new and pertinent authority. The arguments in their motion for reconsideration are no more compelling and persuasive than they were in their motion to dismiss, and they are rejected.

■ The Court will also deny Clifford's and Altman's request for certification pursuant to 28 U.S.C. § 1292(b).[11] The Court may, of course, issue an order granting interlocutory appellate review if she were to find

that the issue involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). *See generally* 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2658.2 (1983); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure: Jurisdiction § 3930 (1977 & 1996 Supp.). However, interlocutory appeals under 28 U.S.C. § 1292(b) are rarely allowed, *see Palandjian v. Pahlavi,* 782 F.2d 313, 314 (1st Cir.) (per curiam), *aff'd mem.,* 808 F.2d 1513 (1st Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1974, 95 L.Ed.2d 814 (1987); *Tolson v. United States,* 732 F.2d 998, 1002 (D.C.Cir.1984), and movants Clifford and Altman bear the "burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Chalfin v. Beverly Enter., Inc.,* 745 F.Supp. 1117, 1122 (E.D.Pa.1990) (internal quotations and citation omitted). Because they have not met their burden, the request for certification will be denied.

■ As explained above, Defendants Clifford and Altman dispute the Court's conclusion that *Bangor Punta* does not mandate dismissal of the Complaint and the Court's determination that the plaintiffs are entitled to discovery to support their allegations that the defendants engaged in acts of fraudulent concealment sufficient to toll the statute of limitations. Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a "substantial ground for difference of opinion" sufficient to satisfy the statutory requirements for an interlocutory appeal. *See Max Daetwyler Corp. v. Meyer,* 575 F.Supp. 280, 283 (E.D.Pa.1983), *certified question answered by,* 762 F.2d 290 (3d Cir.), *cert. denied,* 474

11. This provision provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he

[or she] shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *In re Pyramid Co.,* 141 Vt. 294, 449 A.2d 915, 921–22 (Vt.1992) (under Vermont law). As have other courts, *see, e.g., FSLIC v. Reeves,* 816 F.2d 130, 134 (4th Cir.1987); *Meyers v. Moody,* 693 F.2d 1196, 1207–08 (5th Cir.1982), *cert. denied,* 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983); *National Union Elec. Corp. v. Matsushita Elec. Indus. Co.,* 498 F.Supp. 991, 1003 (E.D.Pa.1980), this Court determined that *Bangor Punta* is inapposite and "considerably different" from the case before her. *See* Mem.Op. at 12 & 14. Other than their interpretation of *Bangor Punta,* Clifford and Altman have offered little to support their desired result, and they have not persuaded the Court that conflicting authority exists on the issue presented under these facts. *See von Bulow v. von Bulow,* 634 F.Supp. 1284, 1312 (S.D.N.Y.1986). The mere claim that a decision has been wrongly decided is not enough to justify an interlocutory appeal. *See, e.g., United States v. Grand Trunk W.R.R. Co.,* 95 F.R.D. 463, 471 (W.D.Mich.1981). While it is true that the facts underlying this suit are quite unusual, neither unusual facts nor legal issues of first impression require, or in this instance justify, certification of an interlocutory appeal. *See Meyer,* 575 F.Supp. at 283. Nor does the mere "lack of authority on a disputed issue ... necessarily establish [a] substantial ground for a difference of opinion under the statute." *FDIC v. First Nat'l Bank of Waukesha,* 604 F.Supp. 616, 620 (E.D.Wis. 1985). The district court is the initial arbiter as to whether there is substantial ground for a difference of opinion, *McNeil v. Aguilos,* 820 F.Supp. 77, 79 (S.D.N.Y.1993), and here, the Court concludes that there is not.

Clifford and Altman also dispute the Court's decision (in resolving the motion to dismiss on the basis of the statute of limitations) not to impute Clifford's and Altman's alleged knowledge and actions to the other directors and senior managers of First American. *See* C & A's Motion for Reconsideration, at 20–24. They contend that since the other record shareholders had contemporaneous knowledge of their alleged wrongdoing, nothing could have been fraudulently concealed from First American. The Court concluded, however, that the Complaint adequately alleged that Clifford and Altman acted adversely to First American and engaged in acts of fraudulent concealment from First American's other directors and senior managers. *See* Mem.Op. at 23. Consequently, as have other courts, *see, e.g., FDIC v. Nathan,* 804 F.Supp. 888, 893–95 (S.D.Tex.1992), this Court decided that the plaintiffs were entitled to discovery to prove both their allegations of fraudulent concealment and that the frauds alleged were committed against the corporation. *See* Mem.Op. at 25–26. These are simply not issues that raise substantial grounds for a difference of opinion to justify the extraordinary measure of an interlocutory appeal.

## B. The Motions to Dismiss the Third Party Complaint and Cross–Claims

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Kenneda v. United States,* 880 F.2d 1439 (D.C.Cir.1989). The factual allegations of the complaint must be presumed true, *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *see* 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357, at 304 (1990), and plaintiffs are entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Nonetheless, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

On substantially the same grounds, all of the contribution and indemnification codefendants seek the dismissal of Clifford's and Altman's cross-claims/third-party complaint, which are, of course, based on Clifford's and Altman's potential liability under the main Complaint. Clifford and Altman are included in five of nine counts in this Complaint: Counts I and II, asserted under RICO, allege that Clifford and Altman conspired to acquire and/or maintain an interest in, or control of, First American (Count I), and in

conducting or aiding and abetting in the conduct of BCCI's affairs through a pattern of racketeering activity (Count II). Counts III and V allege common law fraud and breach of fiduciary duties. Count IX alleges civil conspiracy. After the Court denied Clifford's and Altman's motion to dismiss these counts, they answered and filed the instant third party complaint and cross-claims, seeking contribution from all codefendants and indemnification from certain active and settling codefendants. *See* Answer of Clark M. Clifford and Robert A. Altman, at 98–101, ¶¶ 1–7. Specifically, Clifford and Altman contend that they were led to believe by the contribution defendants that "he or it was a bona fide owner of the CCAH shares standing in his or its name, or represented such an owner." *Id.* ¶ 5. They claim that they "justifiably relied on these representations in all actions ... that are the subject matter of this lawsuit." *Id.* Clifford and Altman demand contribution from each contribution defendant to the extent such defendant or defendants "should be found in this lawsuit to have acted fraudulently or illegally as alleged by First American." *Id.* ¶ 6. Additionally, Clifford and Altman seek indemnification from those who served as directors and officers of First American and made representations, express or implied, or took certain actions, on which Clifford and Altman allege that they justifiably relied.

Almost all of the codefendants argue [12] that neither RICO nor the common law (at least as to intentional conduct) provide a basis for Clifford and Altman to seek contribution. *See* Joint Motion of Sheikh Kamala, et al., at 7–10 & 14; Motion of H.E. Al-Shorafa, at 4 & 6; Motion of Abu Dhabi Sovereigns, at 5–7, 8 & 11; Motion of Abdul Raouf Khalil, at 4–5. *Cf.* C & A's Opposition, at 8 n. 7. ("Messrs. Clifford and Altman do not contest that a finding of civil liability under the applicable RICO provision (18 U.S.C. § 1964(c)), or under theories grounded in fraud or conspiracy, must be based upon a finding of intentional wrongful conduct, and that, under current law, contribution claims are unavailable thereunder.

However, Messrs. Clifford and Altman reserve the right to seek contribution from their co-defendants on those claims as well if liability is allowed to be imposed on any less exacting standard.").

■ Courts have uniformly denied contribution to defendants in both civil RICO actions, *e.g.*, *Friedman v. Hartmann*, 787 F.Supp. 411, 417 (S.D.N.Y.1992); *Jacobson v. Western Montana Prod. Credit Ass'n*, 643 F.Supp. 391, 396 (D.Mont.1986); *Boone v. Beacon Bldg. Corp.*, 613 F.Supp. 1151, 1154 (D.N.J.1985), and under the common law. *E.g.*, *Carriers Insur. Exch. v. Truck Insur. Exch.*, 310 F.2d 653, 658–59 (4th Cir.1962) (construing Virginia law); *Early Settlers Insur. Co. v. Schweid*, 221 A.2d 920, 923 (D.C. 1966); *Hudgins v. Jones*, 205 Va. 495, 501, 138 S.E.2d 16 (Va.1964); *see also* Va.Code § 8.01–34 (no contribution in favor of an intentional tortfeasor).

■ Similarly, indemnification is unavailable under RICO. *E.g.*, *Friedman*, 787 F.Supp. at 418; *In re Olympia Brewing Co. Secs. Litig.*, 674 F.Supp. 597, 616–17 (N.D.Ill. 1987). Although Clifford and Altman refuse to concede their lack of entitlement to indemnification under the common law, *see* C & A Opposition, at 17, there is simply no doubt that a defendant may not obtain indemnification for liabilities arising out of intentional tortious acts. *E.g.*, *Early Settlers Ins. Co.*, 221 A.2d at 923 ("when a person knows, or must be presumed to know, that his act is unlawful ... he will be denied indemnity"); *Philip Morris Inc. v. Emerson*, 235 Va. 380, 411, 368 S.E.2d 268 (Va.1988) (indemnification unavailable for wrongful conduct or active negligence); *see National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 698 F.Supp. 951, 971–72 (D.D.C.1988) (under D.C. law, contract provision providing for indemnifying intentional conduct void as against public policy), *vacated on other grounds*, 892 F.2d 1066 (D.C.Cir.1990).

Defendants Clifford and Altman cling to their contribution and indemnification theory on the contention that First American also

---

**12.** The Dubai Defendants did not present this argument. Because of the result herein, the Court does not reach the jurisdictional arguments raised by the Dubai Defendants on this issue.

seeks to hold them liable for negligent conduct. In the 282–page, 687–paragraph complaint, Clifford and Altman point to three paragraphs that suggest an allegation of negligent conduct. *See* C & A's Opposition, at 9 (citing Complaint ¶¶ 42(b), 43(b) & Count V, ¶ 662). Only Count V and the breach of fiduciary duty allegations contain even a whisper of negligence. While it is true that the Complaint alleges that Clifford and Altman "intentionally, recklessly and/or negligently breached their fiduciary duties," Complaint ¶ 662 (Count V), upon analyzing their contribution and indemnification claim, these few references are insufficient to save it.

Clifford's and Altman's theory fails at the outset, because whether or not the word "negligence" is used in the Complaint, Count V survived Clifford's and Altman's initial motion to dismiss only because this Court held that the "Plaintiffs assert[ed] that ... Clifford and Altman engaged in *illegal* activities." Mem.Op. at 32 (emphasis added). Such activities constitute intentional, as opposed to negligent, acts, depriving them of any right to contribution or indemnification.[13]

▆▆▆ Clifford and Altman are also precluded from seeking contribution from their settling codefendants (although they might be entitled to a *pro rata* credit on any adjudged liability). *Washington v. Washington Hosp. Ctr,* 579 A.2d 177, 187–88 (D.C.1990); *Washington Healthcare Corp. v. Barrow,* 531 A.2d 226, 230 (D.C.1987); *Lamphier v. Washington Hosp. Ctr.,* 524 A.2d 729, 733 (D.C.1987); *Hayman v. Patio Prod.,* 226 Va. 482, 487–88, 311 S.E.2d 752 (Va.1984); *see also* Va.Code § 8.01–35.1. Additionally, they are barred from asserting claims against H.H. Sheikh Zayed, the sitting head of state of the United Arab Emirates, because he is entitled to immunity from the Court's jurisdiction. *See Ex parte Peru,* 318 U.S. 578, 588–89, 63 S.Ct. 793, 799–800, 87 L.Ed. 1014 (1943).

▆▆▆ Contrary to Clifford's and Altman's argument that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.,* governs H.H. Sheikh Zayed's immunity, the enactment of the FSIA was not intended to affect the power of the State Department, on behalf of the President as Chief Executive, to assert immunity for heads of state or for diplomatic and consular personnel. *Lafontant v. Aristide,* 844 F.Supp. 128, 137 (E.D.N.Y.1994); *see, e.g.,* 22 U.S.C. § 254a–e. The United States has filed a Suggestion of Immunity on behalf of H.H. Sheikh Zayed, and courts of the United States are bound to accept such head of state determinations as conclusive. *Ex parte Peru,* 318 U.S. at 589, 63 S.Ct. at 800; *Spacil v. Crowe,* 489 F.2d 614, 617 (5th Cir.1974); *Lafontant,* 844 F.Supp. at 137 & 139; *see Abdulaziz v. Metropolitan Dade County,* 741 F.2d 1328, 1331 (11th Cir.1984); *Carrera v. Carrera,* 174 F.2d 496, 497 (D.C.Cir.1949). Accordingly, the Suggestion of Immunity as to H.H. Sheikh Zayed will be accepted here.

For the above stated reasons, Defendants Clifford's and Altman's cross-claims and third party complaint will be dismissed. Their claims against the contribution and indemnification defendants are rejected for failure to state a claim; the following motions to dismiss will be granted: (1) the Motion of Abdul Raouf Khalil; (2) the Motion of H.E. Al–Shorafa; (3) the Joint Motion of Sheikh Kamala Adham, *et al.;* (4) the Motion of the Dubai Defendants;[14] and (5) the Motion of the Abu Dhabi Sovereigns.

---

**13.** If the Court had allowed Count V to go forward on a negligence theory, it would nevertheless be appropriate here to dismiss Clifford's and Altman's third party complaint for contribution and indemnification based on Rule 14(a). *See Kosters v. Seven–Up Co.,* 595 F.2d 347, 356 (6th Cir.1979). *See generally* 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1460 (1990). After peeling away the layers of their third party complaint, all that would be left is a very narrow ground for recovery on a very narrow theory on one count (and three paragraphs) of a lengthy complaint in an extremely complex case. Allowing Clifford and Altman to implead multiple defendants based on a mere whisper of negligence would confuse the principal issues in the case, create unreasonable but likely delay, and cause additional unnecessary expenses to the parties. *See Kopan v. George Washington Univ.,* 67 F.R.D. 36, 38 (D.D.C. 1975).

**14.** As previously noted, the Dubai Defendants' motion to dismiss the cross-claims of Clifford and Altman is granted on grounds other than those asserted by the Dubai Defendants under the FSIA, and head of state and act of state immunity doctrines.

### C. The Dubai Defendants' Motion to Dismiss

The Dubai Defendants move to dismiss First American's Complaint, raising many of the same arguments that this Court has before rejected. The Dubai Defendants contend: (1) that the Court lacks subject matter jurisdiction on a variety of grounds: they are foreign sovereigns and no FSIA exception applies; they are immune from suit under the doctrine of head of state immunity; that the action is barred by the act of state doctrine; and that the FSIA precludes a Civil RICO claim against foreign sovereigns; (2) that the Court lacks personal jurisdiction over them; (3) that Stock Holding Co. and Sheikh Rashid lack a legal capacity to be sued; (4) that the RICO claim must be dismissed against Sheikh Rashid, because punitive measures do not survive a defendant's death; (5) that First American's claims are barred by the statute of limitations; and (6) that the common law counts fail to state cognizable claims and must therefore be dismissed.

#### 1. *Subject matter jurisdiction*

First, the Dubai Defendants assert that this Court has no subject matter jurisdiction over this case with regard to them due to the FSIA, act of state doctrine and doctrine of head of state immunity. They argue that "as members of the Ruling Family of the Emirate of Dubai or their alleged 'alter egos' [Stock Holding Company and Crescent Holding Company], [they] are foreign sovereigns, and their investments are investments of *public* funds." Dubai Defendants' Motion to Dismiss, at 2 & 7–11 (emphasis in original). They contend that their alleged conduct does not fall within an exception to the FSIA, *id.* at 12, and that both the act of state doctrine and doctrine of head of state immunity bar this suit. *Id.* at 22–27.

▪ The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989).

Its focus, however, "is towards corporate and government entities—legal yet nonnatural 'persons.' Nowhere does the FSIA discuss the liability or role of natural persons, whether governmental officials or private citizens." *Herbage v. Meese*, 747 F.Supp. 60, 66 (D.D.C. 1990), *aff'd*, 946 F.2d 1564 (D.C.Cir.1991). Nonetheless, reason dictates "that the sovereign immunity granted in the FSIA does extend to natural persons acting as agents of the· sovereign," because FSIA immunity is based not on the "*identity* of the person or entity so much as the *nature of the act* for which the person or entity is claiming immunity." *Id.* (emphasis added).

▪ Applying these principles, the FSIA does not apply to these defendants' actions. The Complaint plainly alleges that the Dubai Defendants are being sued for acts directing their "*personal* holding compan[ies] and alter ego[s]" to participate in the scheme to fraudulently acquire and maintain ownership of First American. Complaint at ¶¶ 20–23 (emphasis added). Use of corporate entities created under the laws of a third country, as the plaintiffs allege Sheikh Rashid and Sheikh Mohammed used their alter egos—Stock Holding Company and Crescent Holding Company—are "presumptively engaging in activities that are either commercial or private in nature." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 15 (1976) U.S.Code Cong. & Admin.News 6604, 6613–14; S.Rep. No. 94–1310, 94th Cong., 2d Sess. 15 (1976) U.S.Code Cong. & Admin.News 6604, 6613–14; *see Leith v. Lufthansa German Airlines*, 793 F.Supp. 808, 810 n. 2 (N.D.Ill.1992). The acts alleged as private investments to act as sham nominees are not activities that are traditionally considered to be "sovereign or governmental in nature." *Herbage*, 747 F.Supp. at 67. Assuming the facts alleged are true, the plaintiffs have adequately pled that the Dubai Defendants accepted sham loans from BCCI in their personal capacities to acquire and maintain ownership of First American. The FSIA is, therefore, no bar to this suit against these defendants.[15]

---

**15.** Because of the Court's determination that the Complaint adequately alleges that the defendants' acts were personal, as opposed to official, the Court does not reach the Dubai Defendants' alternative arguments premised upon their being foreign sovereigns.

The act of state doctrine is equally inapplicable. This doctrine only applies if "the relief sought or the defense interposed would have required a court of the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick v. Environmental Tectonics Corp.,* 493 U.S. 400, 405, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990). As noted above, the allegations against the Dubai Defendants do not implicate "official act[s] of a foreign sovereign;" therefore, the act of state doctrine does not apply.

Nor are the Dubai Defendants entitled to head of state immunity as members of the ruling family of Dubai. The State Department has not suggested immunity on their behalf, and their claim is further undermined since the United States recognizes the Emirate of Dubai only as a political subdivision of the UAE, not as an independent state. *See Drexel Burnham Lambert v. Committee of Receivers,* 810 F.Supp. 1375, 1377 (S.D.N.Y.1993), *rev'd on other grounds,* 12 F.3d 317 (2d Cir.1993), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994). Moreover, while there is considerable doubt whether Dubai has the defining characteristics of an independent state under international law, *see* 1973 Dig.U.S.Prac.Int'l Law 17; Restatement (Third) of Foreign Relations § 201 (1987), even were Dubai entitled to recognition as an independent state, the Dubai Defendants would not be entitled to head of state immunity, because none is a sitting head of state. *See, e.g., Lafontant,* 844 F.Supp. at 132; *Republic of Philippines v. Marcos,* 665 F.Supp. 793, 797 (N.D.Cal. 1987). *See generally* Jerrold L. Mallory, Note, *Resolving the Confusion Over Head of State Immunity: The Defined Rights of Kings,* 86 Colum.L.Rev. 169 (1986).

### 2. *Personal jurisdiction*

As with Defendants H.E. Al-Shorafa and Khalil, *see* Mem.Op. at 17–18, the Court has personal jurisdiction over the Dubai Defendants. The District of Columbia long-arm statute permits this Court to exercise "personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—(1) transacting any business in the District of Columbia." D.C.Code Ann. § 13–423(a). A defendant need not transact extensive business in the District of Columbia to be subject to personal jurisdiction here. *Mitchell Energy Corp. v. Mary Helen Coal Co.,* 524 F.Supp. 558, 563 (D.D.C.1981); *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 811 (D.C.1976) (en banc). In fact, "a nonresident defendant need not have been physically present in the District" to be subject to personal jurisdiction here. *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982). The critical inquiry for § 13–423(a)(1) purposes is whether the business transacted within the District of Columbia "can be reached jurisdictionally without offending the due process clause." *Id.* at 993; *see Dooley v. United Tech. Corp.,* 786 F.Supp. 65, 71 (D.D.C.1992); *Brown v. Artery Org., Inc.,* 654 F.Supp. 1106, 1110 (D.D.C.1987).

This standard is met here with respect to the Dubai Defendants. The Complaint alleges that the Dubai Defendants, directly or through their personal holding companies, acted as fraudulent "record shareholders" of First American's parent and engaged in transactions that affected the ownership and control of a Washington, D.C. bank. *E.g.,* Complaint ¶¶ 20–23, 26, 37, 73–77, 86 & 237. It also alleges that they knowingly accepted sham "loans," acting as nominees to further the scheme to conceal the identity of First American's true owners. *Id.* at ¶¶ 77, 86, 230, 237, & 321. And, the Complaint alleges that the Dubai Defendants joined the other defendants in acts to perpetuate BCCI's secret ownership of a District of Columbia-based institution. *Id.* at ¶¶ 77, 86–88, 230–31, 237, 351–53, 360, 398–99. This is enough to establish a *prima facie* case of personal jurisdiction against the Dubai Defendants.[16]

---

16. Because of the conclusion that personal jurisdiction exists as a result of the defendants' acts outside of the District of Columbia, the Court does not reach the plaintiffs' jurisdictional argument based on a conspiracy theory.

### 3. *Legal capacity to be sued*

■ The Dubai Defendants argue that both Stock Holding Company and Sheikh Rashid lack the legal capacity to be sued. They contend that Stock Holding Company, a Luxembourg corporation, merged with Crescent Holding Company and lost its independent capacity to sue and be sued. Similarly, they argue that since there is no designated legal representative or formal probate upon the death of a Ruler of Dubai, the suit against the late Sheikh Rashid must be dismissed. While the Dubai Defendants' assertions may turn out to be accurate, the plaintiffs have alleged sufficient facts to survive the motion to dismiss; the plaintiffs will be entitled to engage in discovery to confirm the identity of, or identify, those entities or persons who have assumed the legal obligations of Stock Holding Company and Sheikh Rashid.[17] *See Estate of Rosenberg by Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995); *Swartz v. Gold Dust Casino, Inc.,* 91 F.R.D. 543, 546 (D.Nev.1981); *Saffron v. Wilson,* 70 F.R.D. 51, 56 (D.D.C.1975).

### 4. *Whether RICO claims survive a defendant's death*

Relying principally upon *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 912–13 (3d Cir.1991), the defendants argue that the RICO count against Sheikh Rashid's estate must be dismissed, because it is punitive in nature. The plaintiffs counter that the Dubai Defendants have ignored the Supreme Court's holding that RICO's legislative history "reveals the . . . emphasis on the remedial role of the treble-damages provision," *Shearson/American Express, Inc., v. McMahon,* 482 U.S. 220, 240, 107 S.Ct. 2332, 2345, 96 L.Ed.2d 185 (1987), and that the only federal appellate court to have been presented with a similar issue has held that RICO claims survive a *plaintiff*'s death, because the "primary purpose" of RICO is remedial. Plaintiffs' Opposition, at 38 (citing *Faircloth v. Finesod,* 938 F.2d 513, 518 (4th Cir.1991)). The plaintiffs also point out that numerous district courts "have concluded that a civil RICO suit is remedial, not penal, and accordingly survives the death of a party." *Id.*

(quoting *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk,* 159 F.R.D. 389, 390 (E.D.N.Y.1994) (collecting cases)).

■ Recognizing the split of authority on the question, *compare Confederation Life Ins. Co. v. Goodman,* 842 F.Supp. 836, 838 (E.D.Pa.1994) *with County of Oakland v. Detroit,* 784 F.Supp. 1275, 1285 (E.D.Mich. 1992), the Court is persuaded that a civil RICO suit survives the death of a defendant. Although the treble damages provisions of a civil RICO suit may suggest a punitive element, the overriding purpose of RICO is to provide a remedy to persons injured as a result of racketeering activity. *E.g., McMahon,* 482 U.S. at 240, 107 S.Ct. at 2344–45; *Faircloth,* 938 F.2d at 518. The statute itself illustrates Congress's general intent: "the provisions of this title shall be liberally construed to effectuate its *remedial* purpose." Pub.L. No. 91–452, § 904(a), Title IX, 84 Stat. 947, *reprinted in* 18 U.S.C.A. § 1961 note (emphasis added). Significantly, civil RICO recovery runs to a private individual, and the mere inclusion of treble damages within a statutory scheme does not operate to make it punitive. *See Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 635, 105 S.Ct. 3346, 3358, 87 L.Ed.2d 444 (1985) (purpose of treble damages provisions in Clayton Act is primarily compensatory).

The principal case upon which the defendants rely is neither controlling nor persuasive. While the *Genty* court concluded that the treble damages provisions of RICO were punitive in a case involving potential municipal liability where actual damages were easily calculated, 937 F.2d at 913, it is not persuasive authority for the broad proposition that all RICO claims are punitive in nature, even where, as here, the actual damages arising from a specific defendant's actions may be difficult to assess.

Consequently, this Court joins those courts that have concluded that a civil RICO suit survives the death of the defendant. *See, e.g., Private Sanitation Indus. Assoc.,* 159 F.R.D. at 390; *County of Oakland,* 784 F.Supp. at 1285; *In re National Mortgage Equity Corp. Mortgage Pool Cert. Sec. Lit.,*

---

17. The Court encourages the parties to confer and enter into any appropriate stipulations.

636 F.Supp. 1138, 1154 (C.D.Cal.1986); *State Farm Fire & Cas. v. Estate of Caton*, 540 F.Supp. 673, 682 (N.D.Ill.1982).

**5. *Statute of limitations***

Defendants next claim that this action is barred by the applicable statute of limitations. For the same reasons stated previously, the Dubai Defendants' argument will be rejected. *See* Mem.Op. at 23–26.

**6. *The common law counts***

▮▮▮▮ The Dubai Defendants assert substantially the same challenges to the common law counts that the Court addressed previously and, with one exception, were found to be without merit. *See* Mem.Op. at 32. As stated before, Count III adequately asserts a claim for fraud against all defendants because the knowledge of the defendants will not be imputed to First American. Moreover, the substantial allegations in the Complaint simply cannot be said to violate Fed.R.Civ.P. 9(b)'s requirement that fraud claims be pleaded with specificity. Count VI sufficiently states a claim of aiding and abetting in breach of fiduciary duties, because it alleges that *all* of the defendants, including the Dubai Defendants, aided Clifford and Altman, who had a fiduciary duty to First American *as an entity.* Clifford and Altman are alleged to have engaged in illegal activities, and it is irrelevant that many of the shareholders may have ratified their illegal actions. *See Safety Int'l, Inc. v. Dyer*, 775 F.2d 660, 662 (5th Cir.1985); *Sellers v. Head*, 261 Ala. 212, 73 So.2d 747, 750 (Ala.1954). The plaintiffs' claim in Count VIII that the Dubai Defendants engaged in reckless and negligent misconduct will be dismissed because there is no allegation that these defendants owed a duty of care to the plaintiffs. Finally, Count IX states a claim for civil conspiracy because actionable torts have been alleged.

**D. The Motion for Reconsideration of Magistrate Judge Attridge's Ruling**

Defendants Clifford and Altman request reconsideration by this Court of Magistrate Judge Attridge's order denying their motion for a protective order to stay foreign deposi-

tions pending a ruling on the Motion for Reconsideration addressed *supra*, at 9–13. Because this Court has reconsidered and rejected herein their Motion for Reconsideration, the motion to reconsider Magistrate Judge Attridge's order will be denied as moot.

**III. Conclusion**

For the reasons expressed above, it is hereby

**ORDERED** that Defendant Clifford's and Altman's Motion for Reconsideration of this Court's August 25, 1995 Memorandum Opinion and Order or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b) is denied; it is

**FURTHER ORDERED** that the motions to dismiss by the contribution and indemnification codefendants are granted. Defendants Clifford's and Altman's cross-claims and third party complaint are dismissed; it is

**FURTHER ORDERED** that the Motion of the Dubai Defendants is granted in part and denied in part. Count VIII is dismissed; it is

**FURTHER ORDERED** that Defendants Clifford's and Altman's Motion for Reconsideration of Magistrate Judge Attridge's Order Denying a Protective Order is denied as moot; and it is

**FURTHER ORDERED** that discovery shall close on **October 31, 1997.** By separate order issued this date, this case has been consolidated with *Clifford v. First American,* Civ.A. No. 95–0877(JHG) (D.D.C.), for the purposes of discovery.

IT IS SO ORDERED.